Good morning, everyone. Can you hear me okay? Yes, we can hear you, Judge. Excellent. I am presiding from afar, so I hope it's not too awkward for all of the participants. I want to begin by welcoming Judge Thacker. Judge Bennett and I are delighted that you have taken time out of your own busy schedule to come and help us with our docket, and we welcome you. Thank you. You're most welcome. And the first case on the docket is submitted on the briefs, that is Gerson v. Sessions. We'll hear the remaining cases in the order in which they appear on the docket, but I thought I would let everyone know that I think we'll have a short recess after the third case, since we have rather a lengthy list this morning, so for the lawyers to plan for that. With that, we'll begin with Singh v. Sessions. Mr. Russell? Yes, good morning, Your Honors. May it please the Court, Morgan Deep Singh. So this is a petition for review of the Board of Immigration Appeals' denial of a motion to reopen, alleging changed circumstances arising in India since the time of the petitioner's last hearing in 2010, before the agency. The BIA, from my reading of the BIA decision, there was two bases for its decision. The first was that Mr. Singh hadn't presented previously unavailable evidence. The government disagrees and says that's not what the BIA was saying in that first paragraph at the top of page 4 of the record, and so if the government doesn't want to defend that, then that's fine with us, although I don't think that's the most natural reading of that paragraph. If the government's position is right, though, and that concession is taken, that leaves just the issue of whether Mr. Singh showed changed circumstances since the time of his last hearing. On the changed circumstances issue, I wanted to first apologize to the Court for the confusing and mistaken discussion in the opening brief of this Court's decision in Oyendiran. We said in the opening brief that Oyendiran dictates reversal on the changed circumstances issue, and of course, as the government pointed out, that's not right, because that exception and that requirement wasn't at issue in Oyendiran, and so it couldn't have held one way or another. Well, let me, if you don't mind, since your time is limited, get right to the heart of it. As I understand it, the changed circumstances in India consist of, in your view, very significantly heightened police surveillance of separatists who are abroad, and the sort of resulting punishment, including death, that awaits such individuals upon their return. So, am I right about your claim? Yes, that's right, as well as the fact that police specifically told his father that they were aware that the petitioner had been active in the movement here in the U.S. and threatened to disappear him and said that the father would never see his son again if he returned. So sort of both. Well, that's sort of the causal link, but he does have to show not just personal changes, but changes in India. Right. That's right. I think, and I think here there's that background, sort of the background developments you mentioned are changes arising in India. I think it's not a, I think even if that weren't the case, a specific kind of new development like the police making a threat to him here would be also a changed circumstance arising in India within the meaning of the statute. But you're absolutely right that there's much more than that here. There's this whole series of events of which the threat to him particularly is just one, is just one expression. Although in, as the government points out at page 20 of its brief, in 2005, your client's father indicated that your client had been threatened. Right. And I think as we explained in the reply brief, that threat was, you know, was different both in its motive and its, and in its severity and concreteness. That was based on the father's activity. And it was sort of a threat to do what had been done to the father, which was one, one detention and one beating, which I think is at best a borderline asylum claim under this court's precedent. Whereas now there's, in the context of this crackdown and surveillance of separatists abroad, there's this very specific threat that they know that he's active here and that they plan to disappear him as if done with others, if he returns. But let me just tell you that the issue that I have in the case, and maybe you can help me, we review for abuse of discretion and the BIA didn't say you presented no evidence of changed circumstances. They, they couched it more as it's insufficient. It's not adequate or meaningful to demonstrate material changes. And those are sort of weasel words that suggest that they've looked at your evidence, not that they think there isn't any, but that they just don't find the changes in the government's dealings with separatists abroad to be sufficient. And I'm not sure how we evaluate that under an abuse of discretion standard. What, what, what should we do in analyzing it? So, a couple things. So for abuse of discretion, if the agency immediately erred, that's abuse of discretion. If the decision is contrary to substantial evidence, that's abuse of discretion. And here I think weasel words is a good characterization. In fact, they don't explain that conclusion at all. They just say, you know, two isolated But they don't have to. They don't have to, do they? I mean, if they look at your evidence and say, we've considered the evidence and we don't find it sufficiently probative or we don't, we're just not persuaded by it. What, what more do they have to do? I mean, they've talked about some of the factors that are, are in their mind. And, and do we use the same substantial evidence standard in this context as we do for a typical asylum claim? In other words, do we have to be compelled to reach a different result? Well, I, I think here there's, I mean, in terms of the explanation, I would disagree respectfully. I think they do have to explain why. I mean, the standard is, is material changes. So just saying there's not material changes isn't enough. In the rest of that paragraph, they go on and give some explanations with respect to the evidence about religion. I think those explanations are legally erroneous because official proclamations are not what's at issue. It's the actual sort of increase in violence and danger, but they don't give any explanation. I didn't explain myself very well, I guess, in my question. As I read it, they're saying we can't assess whether there's a material change because we don't have a good enough baseline from what, how this issue that is separatists abroad was dealt with at the time of the earlier application. So we don't, we can't really determine that it's material because we don't know where it started. And that may, you may not agree with that, but it is an explanation. So that's, so that's one reason they give. I think that reason is different from the change, the evidence of changes isn't enough. So I think they say that it's, it's not enough of a change. It's not a material change. And they say it's sort of, it doesn't meet kind of an evidentiary requirement to present evidence as of the year 2010. And so on that issue, I agree that's an explanation, but that's a legally erroneous explanation. It doesn't, there's nothing in the statute or the regulation or any holding of a published BIA or ninth circuit decision that says you have to submit reports specifically from the year of the prior hearing. The BIA didn't cite anything in support of that. The government has cited dicta in this court's decision in Saleem saying that such a motion is concerned with two points in time, the time of the prior hearing and the time of the motion to reopen. But as explained in the reply brief, the holding of Saleem and the facts of Saleem are exactly contrary. The prior hearing in Saleem was in 2006. The MTR was filed in 2013. The holding of that case is that there was reports, they reverse the denial of the change circumstances motion to reopen saying that there were reports that state that Christians, and this is quoting that Christians have increasingly been the target of Islamic extremist movements in the past two or three years. That's two or three years prior to the filing of the motion to at 1138. Uh, so I don't think there's any support. And if anything, the case, the government sites is directly contrary. The BIA in an unpublished one member opinion like this can't just create a new evidentiary requirement that he had to present reports about 2010 when there's all this evidence of just like in Saleem increased violence in the last two or three years. They specifically found that whatever Hindu Christian violence occurs that has existed for many years prior to the IJ's decision. So that's a finding, uh, that the BIA made. Yes. Well, Hindu Christian violence. I think that that finding is directly contrary to the evidence which they don't address, which is the U S government report, the U S commission on international religious freedom from 2015 saying that in the past two, three years, 2013, 14, 15 violence against Christians has increased. That's in step with this surge in Hindu nationalism. That's also led. So your view is that they evaluated the evidence before them in such a flawed manner that they abused their discretion. Well, they didn't address that report at all, which was the key foundation in the motion to reopen at pages 40 to 41 discussing the changes in violence against Christians. They can't just disregard arguments altogether. They have to consider there has to be some indication that considers the evidence, especially when the only thing they say about it is directly contrary to a report from the U S government agency like that one that normally would be given a lot of weight. Well, they do say several times that the evidence you submitted, uh, isn't sufficient to demonstrate change conditions. And, uh, are you saying in response to judge Graber's question that they, that they're required to discuss all of the evidence as they're required to address our arguments and discuss the, the key evidence that we cited in the motion to reopen? Um, I think this court has held that repeatedly, both in the MTR and asylum context that the board can't just ignore arguments or ignore evidence that that undermines the decision they want to reach in a conclusory assertion, just setting forth the legal legal standard and saying it's not met with that explanation isn't enough. Thank you. Thank you, counsel. You've exceeded your time, but we asked a lot of questions so you can have a minute for rebuttal when the time comes. Thank you so much. Good morning, your honors. May it please the court. My name is Kosei Yugimori and I represent the United States. This petition for review should be denied because the board did not abuse its discretion in denying the petitioner's third untimely motion to reopen. Counsel, may I ask you some questions about this? Because I find this, uh, somewhat a disturbing case and, um, it seems to me that the BIA's decision doesn't really respond to what the argument is. In the following way, I take the changed conditions to be an increase in police interest in separatists who are active abroad, and they don't even really mention that in their decision. And so it seems kind of non-responsive to me in terms of how it's written and how it's, uh, reasoned. So, uh, can you, uh, respond to that concern? I'd be happy to, your honor. So what the board stated, uh, found was that, uh, he, that the, that the petitioner, uh, has not explained why he did not file this application previously. That is, that the the, the, the material that he submitted is that in, in later, at a later time, the police began to be more interested in separatists who were active in other countries. And if that is a recent development, it's completely irrational to say, well, he didn't mention this recent development before it developed. So that seems to me to be completely unhelpful. And I, I, I guess I just, uh, don't see them really talking about the issue that he's actually raising. Well, the bottom line, your honor, uh, is that the board has concluded that, uh, the circumstances in India has not changed. That is, they were interested in man party members before, and they're still interested in man party members now. Are you saying the board did address it, uh, in the first paragraph? Where? Where does the board, has he talked, he said that the board didn't address the report at all or the arguments that they raised? Well, in, uh, the, uh, I believe he was referring to the violence against Christians. Um, that has to do with, uh, a subsequent part of the board's decision. And the board sufficiently, uh, addresses that. And in particular, the violence against Christians is really irrelevant to his claim that he, as a Sikh Indian, uh, will be harmed. Uh, and returning to your- That's exactly my problem with the way it's written. The, the not presenting it previously makes sense when it relates to his wife because he was married to her before the previous proceeding. And of course, with respect to that, they're absolutely correct, but that's not his claim here on review. And I don't see the BIA addressing the specific claim that the police have a significantly materially different, qualitatively different interest in Sikh separatists who are active in the United States and, and elsewhere abroad. I just don't see them responding to that in any way. And, and if you can point me to somewhere in the BIA's decision where they talk specifically about that, perhaps I missed it, but I don't see it. So if I may give two responses to that, Your Honor. Uh, first, uh, the board says, uh, that, um, uh, the basis of his claim was, uh, previously, you know, available to him. And in, in this way, Your Honor, first and foremost, at page 37 and page 40 of the petitioner's brief, he concedes that there is no general change in country conditions. His claim is that he constitutes the changing country conditions. No, it's, but it, but see, that's a misunderstanding of the claim and that's my exact concern. Then the BIA seems to have the same view. It's not, that is evidence of changed country conditions because it's coupled with news articles and other information, including his, uh, and his father's statements that in general, the police are now going after people abroad that they didn't use to go after it with such enthusiasm. And so, again, I don't see anything in the BIA's decision at all that responds specifically to that claim. Your Honor, uh, the BIA specifically states that the threat in 2015 was, was not, uh, different than the threat in 2005. That it was the same persecutor, it was the same victim, same motive, that is the political activity with the Mann Party, and the same context, that is the petitioner was active in Mann Party politics in 2005. He had gone into hiding in 2004 to 2006 because his father had been tortured. Counsel, in the penultimate paragraph of the BIA decision, where it starts off by saying much of the evidence regarding political opinion revolves around two isolated incidents occurring in October and November 2015, and then it describes the motion and exhibits U through JJ, but does not demonstrate material changes from 2010 to the present. Does that constitute, in part, the BIA considering this argument? Yes, Your Honor. The, the BIA considered all of the petitioner's arguments. The, the findings in the Board's decision are dispositive, and under, uh, this Court's adjustment, the Board did not write an exegesis on, on, in response to every, uh, argument. No, I agree with that, but I have a question about facts. Is the BIA, in this context, permitted to make factual findings? Because ordinarily, in an asylum case, they can't, only the IJ can, and then they review for clear error. Um, and it's different in this context, but, uh, are they required to take the affidavits and other evidence that's presented as true for the purpose of analyzing changed conditions, or are they permitted to disbelieve it? What, what is their fact-finding role, if any? Well, under this Court's, uh, precedent, uh, affidavits must be accepted as true unless inherently implausible. However, the Board has discretion, uh, to determine whether there has been a suspicion of changing country conditions. Uh, and in particular, the regulation that, uh, constrains the Board's fact-finding, uh, may not apply to motions to reopen, Your Honor, uh, because, uh, I believe that only applies to direct appeals, uh, from an individual. So, so they're required to take the, the statements as true. Yes. Um, unless they're, you know, obviously ridiculous. And so, can they make factual findings that differ from what is stated in the statements? Well, they can't, can they? Well, there's a difference between accepting a statement as true and reconciling inconsistencies, Your Honor. A statement could be accepted as true, and yet the Board can still find that the, uh, petitioner has not met his burden of proof. Well, that's certainly true. I mean, if he says, you know, there are more, uh, stray dogs than there used to be, that doesn't really matter. Um, so that's fair enough. But, um, I, I just was, uh, responding, I guess, to your earlier comment that the Board had made factual findings. Well, they're not so much factual findings. Uh, they're preliminary determinations to determine whether further, uh, proceedings are warranted. Um, and that, that's the purpose of a motion to reopen. Uh, there is not a immigration judge who first reviews the information, and then it's appealed to the Board. No, that's right. If, if he's, if he's successful, all he gets is a hearing. He doesn't necessarily win anything. That's right, Your Honor. And, uh, to, uh, briefly distinguish, uh, the, the case in Salem v. Holder, Your Honor. Uh, the petitioner argues that he doesn't need to submit evidence from his prior hearing, but that's contrary to the regulation, which specifically refers to the prior hearing. It's contrary to this Court's decision in Malti v. Ashcroft in 2004, and also contrary to what the petitioner referred to as dicta in the case of Holder, decided by this Court in 2016. And to the extent the petitioner states that he's, he's, he's, he's, he's, he's, he's, he's, what regulation specifies that there has to be evidence, uh, specific to the time of the previous? That's, uh, ACFR. That's the Change Country Conditions Exception at ACFR 1003.2. Uh, it says to apply or reapply for asylum, so on and so forth. Uh. You have to show changed, changed circumstances, but it doesn't say that you'd have to have specific evidence from the previous time. If you show that, let, let's say you did something in 2010, and all you have are, are, uh, affidavits relating to what's happened in the last six months, and it's horrible. You don't have to go back and re-litigate 2010, do you? It's not re-litigation, Your Honor. The petitioner needs to submit evidence of country conditions at the time of the hearing, and if you look at the second clause of the regulation, it refers to the previous hearing, and the Board is very specific about that in matter of S.Y.G. as well, uh, and it, which is cited in the Respondents' Brief at page 16 to 17. It's very briefly on Salem, Your Honor. In that case, the Board found that the new evidence in relation to reopen was cumulative of the prior country conditions evidence. This case, the Board found that the new evidence did not shed light on the prior evidence, so what evidence was submitted at the prior hearing was not at issue in Salem in the way it's at issue in this case, Your Honor. Thank you, counsel. Thank you, Your Honor. You may have a minute for rebuttal, Mr. Russell. Thank you, Judge. Um, so briefly, just on the regulation, I think Your Honor is right. Uh, my colleague was about to say that at the end of that regulation, it, it refers to the prior hearing. I think that's what he meant when he said that, but that last, that last clause in the back to the previously unavailable, um, requirement. It says if such evidence, you have to present evidence of changed circumstances, and such evidence has to have been not available and could not have been discovered or presented at the prior hearing, that's, that's not setting forth some different evidentiary standard as to what the evidence of changed circumstances has to be. That's just reiterating that it has to be new since the prior hearing, and that we clearly have here. Um, just like in Salem where the Court returned, despite the dicta that the government relies on in the substance of its, uh, conclusions and holdings, it refers back time and again to the fact that there is these reports of increased violence that are after 2006, that have occurred since 2006, and that's the same thing we have here with respect to, to 2010. I think the BIA, it seems like the BIA thought that it could rely on this evidentiary requirement that it invented for this case, and so it didn't have to address the actual evidence, and that's why it didn't address it. That's my best reading of the BIA's opinion. Thank you, counsel. Uh, the, uh, case just argued is submitted, and we appreciate the helpful, uh, and thoughtful arguments from both of you.
judges: Thacker, Graber, Bennett